**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1) EVANSTON INSURANCE COMPANY,** an Illinois corporation,  as successor by merger to Alterra Excess & Surplus Lines Insurance Company f/k/a Max Specialty Insurance Company, | |
| Plaintiff, | Case No.  CIV-18-781-F |
| v. | |
| **(1) EAGLE CONTRACTING, LLC,** an Oklahoma limited liability company; **(2) VIC MAYA,** an individual; **(3) A&S ROOFING, LLC**, an Oklahoma limited liability company; **(4) OKLAHOMA PROPERTY INVESTORS, LLC**, an Oklahoma limited liability company; **(5) OKLAHOMA PROPERTY INVESTORS II, LLC**, an Oklahoma limited liability company, **(6) OKLAHOMA PROPERTY INVESTORS III, LLC,** an Oklahoma limited liability company; and **(7) JASON P. LAKIN**, an individual, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Evanston Insurance Company (hereinafter "Evanston"), an Illinois corporation, as successor by merger to Alterra Excess & Surplus Lines Insurance Company f/k/a Max Specialty Insurance Company (hereinafter "Max Specialty"), and pursuant to Title 28 U.S.C. §§1332 & 2201, requests this court to enter a judgment declaring its rights and obligations under a commercial general liability ("CGL") insurance policy which Max Specialty issued to the defendant Eagle Contracting, LLC (hereinafter "Eagle") in regard to the following lawsuit: *Oklahoma Property Investors, II, LLC v. A&S Roofing, LLC, et al. v. Eagle Contracting, LLC, an*

*Oklahoma limited liability company; and Vic Maya, an individual*, Case No. CJ-2017-4548, Oklahoma County, Oklahoma (hereinafter "Lawsuit").

Evanston requests this court to enter a judgment in its favor and against the defendants, Eagle, Vic Maya (hereinafter "Maya"), A&S Roofing, LLC (hereinafter "A&S"), Oklahoma Property Investors, LLC, Oklahoma Property Investors, II, LLC, Oklahoma Property Investors, III, LLC (hereinafter collectively "OPI"), and Jason P. Lakin (hereinafter "Lakin"), holding that the CGL policy issued by Max Specialty to Eagle does not provide coverage for the third-party claim asserted by A&S against Eagle and Maya in a "Third-Party Petition" (hereinafter "TPP"); that Evanston has no duty to indemnify Eagle and Maya with respect to the TPP; and that Evanston has no duty to defend Eagle and Maya in regard to the TPP.   In support of this Complaint for Declaratory Judgment, Evanston states and alleges:

## I. PARTIES

1.      Evanston is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in Illinois.

2.      Eagle is a limited liability company organized under the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma.

3.      Maya is a citizen of the State of Oklahoma.

4.      A&S is a limited liability company organized under the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma.

5.      OPI are all limited liability companies organized under the laws of the State of Oklahoma, with their principal place of business in Oklahoma City, Oklahoma.

6.      Lakin is a citizen of the State of Oklahoma.

## II. JURISDICTION

7.      Complete diversity exists between Evanston, an Illinois corporation with its principal place of business in Illinois, and Eagle, A&S and OPI, which are all Oklahoma limited liability companies with their principal places of business in Oklahoma City, Oklahoma, and Maya and Lakin whom are both citizens of the State of Oklahoma as required by Title 28 U.S.C. §1332(a)(1).

8.      Evanston seeks a declaration of its rights and obligations under Max Specialty Policy No. MAX01803003628, issued to Eagle, which has a policy period of June 4, 2010 to June 4, 2011 (hereinafter "Max Specialty Policy"). [Exhibit 1, Max Specialty Policy No. MAX01803003628].[1]

9.      OPI filed the Lawsuit against A&S and Lakin in regard to the application of three membrane roofing systems in 2011 by its subcontractor, Eagle, on buildings owned by OPI located at 3700 North Classen Boulevard, 3800 North Classen Boulevard, and 2915 North Classen Boulevard in Oklahoma City, Oklahoma; claiming damage in the amount of $235,000.00. [Exhibit 2, Petition, Case No. CJ-2017-4548, Oklahoma County, Oklahoma].

10.     A&S has filed a TPP in the Lawsuit against Eagle and Maya for indemnity based on its subcontractor status, in regard to the application of the three membrane roofing systems. [Exhibit 3, Third-Party Petition of A&S Roofing, LLC, Case No. CJ-2017-4548, Oklahoma County, Oklahoma].

11.     The matter in controversy in this action exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00) as required by Title 28 U.S.C. §1332(a).

---

[1] The policy, however, was cancelled effective August 16, 2010.

## III.  VENUE

12.     Evanston seeks a declaration of its rights and obligations under the Max Specialty Policy which was issued to Eagle, as named insured, which maintains its principal place of business in Oklahoma County, Oklahoma.

13.     Evanston seeks a declaration of its rights and obligations under the Max Specialty Policy with respect to the TPP A&S has filed against Eagle and Maya in the Lawsuit pending in Oklahoma County, Oklahoma.

14.     Oklahoma County, Oklahoma, is among the counties comprising the United States District Court for the Western District of Oklahoma. Title 28 U.S.C. §116(c).

15.     Venue is appropriate in this court because it is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" and also because it is a "judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Title 28 U.S.C. §1391(a)(2, 3).

## IV.  THE MAX SPECIALTY POLICY

16.     Max Specialty issued the Max Specialty Policy to Eagle, with a policy period extending from June 4, 2010 to June 4, 2011; however, it was cancelled effective August 16, 2010. [Exhibit 1].

17.     The Max Specialty Policy provided per occurrence limits of $1,000,0000.00 and subject to a $2,000,000.00 general aggregate, and provides in pertinent part as follows:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1.  Insuring Agreement
>     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will

have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \*

2. Exclusions

This insurance does not apply to:

\* \* \*

j. Damage To Property

"Property damage" to:

\* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

\* \* \*

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

I. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

SECTION V – DEFINITIONS

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal "your product" or "your work" or your fulfilling the terms of the contract or agreement.

* * *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

         Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

21. "Your product":

   a.  Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b.  Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a.  Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b.  Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions.

\* \* \*

[Exhibit 1].

8

18.     The Max Specialty Policy also contains the following endorsement (hereinafter

"Roofing Restriction"):

> ### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> ### ROOFING RESTRICTION
>
> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE**
> **COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**
>
> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" or any claim for injury or damage arising out of, resulting from or in connection with:
>
> \* \* \*
>
> 3.  Any operations involving any hot tar, wand, open flame, torch or heat applications, or hot/heated membrane roofing; and/or
>
> 4.  Any operations arising out of roofing performed on a building or structure with a height of six (6) stories.

[Exhibit 1].

19.     The Max Specialty Policy also contains the following endorsement (hereinafter

"Designated Work Exclusion"):

> ### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> ### EXCLUSION - DESIGNATED WORK
>
> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
>
> **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
>
> ### SCHEDULE
>
> Description of your work:
>
> **HOT TAR, TORCHDOWN OR ANY HOT PROCESS ROOFING**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

[Exhibit 1].

## V.  OPI CLAIMS AGAINST A&S AND LAKIN IN THE LAWSUIT

20.     The OPI claims against A&S and Lakin in the Lawsuit arise out of the application of membrane roofing systems by A&S, through Eagle as its subcontractor, on three buildings located at 3700 North Classen Boulevard, 3800 North Classen Boulevard and 2915 North Classen Boulevard, all in Oklahoma City, Oklahoma.

21.     Upon information and belief, the application of the membrane roofing system on the building located at 3700 North Classen Boulevard was substantially completed on August 1, 2010.

22.     Upon information and belief, the application of the membrane roofing system on the building located at 3800 North Classen Boulevard was substantially completed on August 5, 2010.

23.     Upon information and belief, the application of the membrane roofing system on the building located at 2915 North Classen Boulevard was substantially completed on December 5, 2010.

24.     During its investigation of OPI's claims against A&S and Lakin, Evanston was advised by A&S that the roofing operations on all three buildings consisted of putting down of a TPO roof system (Thermal Plastic Polyolefin) membrane.

25.     The Lawsuit filed by OPI in Oklahoma County, Oklahoma against A&S and Lakin asserts the following allegations against them:

1.   Plaintiff retained the services of Defendants for the purpose of replacing the roofs of several of its Oklahoma City properties, namely: 2915 N. Classen Blvd.; 3700 N. Classen Blvd., and 3800 N. Classen Blvd.

2.   Defendants performed the re-roofing of Plaintiff's 3800 N. Classen Blvd. property on or about August 1, 2010.

3.   Defendants performed the re-roofing of Plaintiff's 3700 N. Classen Blvd. property on or about August 5, 2010.

4.   Defendants performed the re-roofing of Plaintiff's 2915 N. Classen Blvd. property on or about December 15, 2010.

5.   Defendants issued written warranties to Plaintiff for the re-roofing of each of the aforementioned properties, which each said warranty provided for a full 15 years warranty from the above-mentioned dates of August 1, 2010, August 5, 2010, and December 15, 2010.

6.   Defendants have breached each warranty by performing the work in a poor craftsmanship like manner resulting in failures to each of the aforementioned properties' roofs.

7.   Plaintiff has afforded Defendants several opportunities to repair each roof's failures, all of which have not corrected the installation's poor craftsmanship.

8.   Plaintiff has and continues to incur expenses in repairing the poor craftsmanship performed by Defendants for which Defendants are liable.

9.   Plaintiff has incurred additional expenses and losses due to Defendants' breach of the warranties for which Defendants are liable.

10. Defendants' breach has and continues to cause the Plaintiff to suffer damages, including but not limited to: damages to its properties, damages to the property of its tenants and costs of repairs to its properties.

11. Defendant, Jason P. Lakin, at all relevant and pertinent times herein acted as an agent of and for Defendant, A&S Roofing, and is equally and concurrently liable for the damages suffered by Plaintiff for the failures of the re-roofing and of the aforementioned properties by Defendant, A&S Roofing due to the installation's poor craftsmanship.

12. There is no alternative other than the complete re-roofing of each of the aforementioned properties as all previous measures to repair Defendants' poor craftsmanship have failed to rectify the defects.

13. Plaintiff's damages for Defendant's poor craftsmanship on its property located at 2915 N. Classen Blvd, is in excess of $55,900.00.

14. Plaintiff's damages for Defendant's poor craftsmanship on its property located at 3700 N. Classen Blvd, is in excess of $89,900.00.

15. Plaintiff's damages for Defendant's poor craftsmanship on its property located at 2915 N. Classen Blvd, is in excess of $89,900.00.

16. Plaintiff continues to expend funds to prevent damage to its aforementioned properties for which Defendants are liable.

WHEREFORE premises considered Plaintiff prays for judgment of this Court against Defendants and each of them for money damages, in an amount in excess of $235,500.00 plus interest, costs and attorney fees as allowed by law.

[Exhibit 2].

## VI.  THE A&S TPP AGAINST EAGLE AND MAYA FILED IN THE LAWSUIT

26.    The TPP filed in the Lawsuit by A&S against Eagle and Maya asserts the following allegations against them:

1.  Plaintiff Oklahoma Property Investors III, LLC, has sued Defendant A&S Roofing, LLC, in this action claiming that A&S is liable to plaintiff for damages caused by allegedly poor workmanship when performing roofing on three Oklahoma City properties located at 2915 N. Classen Boulevard, 3700 N. Classen Boulevard, and 3800 N. Classen Boulevard. See Exhibit 1, Petition.

2.  A&S filed its answer in this action less than ten days ago, permitting A&S to bring a third-party defendant as a matter of right pursuant to Oklahoma Statutes 12 Section 2014(A).

3.  A&S subcontracted the roof repair on these three buildings to Eagle Contracting, LLC, and Vic Maya, which performed all work on the roofs, not A&S.

4.  If A&S is found liable to the plaintiff in this action, it seeks indemnity from Eagle Contracting, LLC, and Vic Maya.

Defendant and third-party plaintiff A&S Roofing, LLC, demands judgment against Eagle Contracting, LLC, and Vic Maya for all sums, if any, for which it might be adjudged to be liable to plaintiff, and such other and further relief as this Court deems just and equitable.

[Exhibit 3]

## VII.  APPLICATION OF THE MAX SPECIALTY POLICY
## TO THE OPI CLAIMS IN THE LAWSUIT AND THE A&S TPP

27.    The claims asserted by A&S against Eagle and Maya in its TPP as presented potentially fall within the policy period of the Max Specialty Policy, that being June 4, 2010 to August 16, 2010; although the application of the membrane roofing system on the building

located at 2915 North Classen Boulevard was substantially completed on December 5, 2010, after the Max Specialty Policy expired.

28.     During its investigation of OPI's claims against A&S and Lakin, A&S advised Evanston that the roofing on all three buildings consisted of putting down of a TPO roofing system (Thermal Plastic Polyolefin) membrane.

29.     If there is no claim for "property damage" in the Lawsuit or the TPP, then the applicable insuring agreement in the Max Specialty policy has not been triggered, and there is no coverage.

30.     If there is a claim for "property damage" in the Lawsuit or TPP, but such "property damage" was not caused by an "occurrence," then the applicable insuring agreement in the Max Specialty policy has not been triggered, and there is no coverage.

31.     To the extent that any "property damage" claimed in the Lawsuit arises out of work performed by Eagle which did not take place during the policy period of the Max Specialty Policy, no coverage is provided.

32.     Exclusion j(5) eliminates any coverage for "property damage" claimed in the Lawsuit and/or the TPP.

33.     Exclusion k eliminates any coverage for "property damage" claimed in the Lawsuit and/or the TPP.

34.     Exclusion l eliminates any coverage for "property damage" claimed in the Lawsuit and/or the TPP.

35.     Exclusion m eliminates any coverage for "property damage" claimed in the Lawsuit and/or the TPP.

36.     The Roofing Restriction states that the "insurance" provided by Max Specialty does not apply to "property damage…or any claim for injury or damage arising out of, resulting from or in connection with…3. Any operations involving any hot tar, wand, open flame, torch or heat application, or hot/heated membrane roofing…" The Roofing Restriction excludes and eliminates any coverage for the claims contained in the Lawsuit and the TPP.

37.     The Designated Work Exclusion describes Eagle and Maya's work as follows: "HOT TAR, TORCHDOWN OR ANY HOT PROCESS ROOFING" and states that:

> This insurance does not apply to..."property damage" included in
> the "products completed operations hazard" and arising out of
> "your work" shown in the Schedule.

The Designated Work Exclusion excludes and eliminates any coverage for the claims contained in the Lawsuit and the TPP.

38.     The Max Specialty Policy does not provide coverage for the claims asserted in the Lawsuit, nor those asserted by A&S against Eagle and Maya as contained in its TPP; therefore, Evanston has no duty to defend Eagle and Maya.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, premises considered, the plaintiff, Evanston Insurance Company, as successor by merger to Alterra Excess & Surplus Lines Insurance Company f/k/a Max Specialty Insurance Company, prays the court to enter a declaration pursuant to Title 28 U.S.C. §2201, holding, adjudging and decreeing that Max Specialty Insurance Company Policy No. MAX01803003628 does not provide coverage for the claims asserted in the Lawsuit, nor those asserted by the defendant, A&S Roofing, LLC against Eagle Contracting, LLC and Vic Maya as contained in its TPP filed in the Lawsuit; and further, that Evanston Insurance Company, as successor by merger to Alterra Excess & Surplus Lines Insurance Company f/k/a Max Specialty Insurance Company has no duty to indemnify or defend Eagle Contracting, LLC and Vic Maya

in regard to the claims asserted against them by A&S Roofing, LLC in regard to its TPP filed in the Lawsuit. Plaintiff, Evanston Insurance Company, as successor by merger to Alterra Excess & Surplus Lines Insurance Company f/k/a Max Specialty Insurance Company, further prays that it be awarded its costs and attorney fees incurred in pursuit of this declaratory judgment, and any and all other relief as this court may deem just and proper.

Respectfully submitted,

SECREST HILL BUTLER & SECREST

s/Roger N. Butler, Jr.
ROGER N. BUTLER, JR., OBA #13668
7134 South Yale Ave., Suite 900
Tulsa, OK 74136-6360
(918) 494-5905 Telephone
(918) 494-2847 Facsimile
**ATTORNEYS FOR PLAINTIFF EVANSTON INSURANCE COMPANY as successor by merger with ESSEX INSURANCE COMPANY**